IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


ADRIAN EDMONDS,

                Plaintiff,

      vs.                          Civil Action 2:07-CV-1227
                                     Magistrate Judge King
DEB TIMMERMAN-COOPER,
Warden, *et al.*,

                Defendants.



OPINION AND ORDER

      This is a civil rights action under 42 U.S.C. § 1983 in which
plaintiff, an inmate at the London Correctional Institution ("LoCI")
who is proceeding without the assistance of counsel, alleges that
defendants instituted a policy requiring male heterosexual inmates to
sit across the table from, rather than next to, visiting wives,
girlfriends and mothers of children, in violation of his rights under
the First and Fourteenth Amendments to the United States Constitution.
With the consent of the parties, 28 U.S.C. § 636(c), this matter is
before the Court on *Defendants' Motion for Summary Judgment*, Doc. No.
20 ("*Defendants' Motion*").  For the reasons that follow, *Defendants'
Motion* is **GRANTED**.

I.      **FACTUAL BACKGROUND**

     A.    **New Visitation Policy**

      In April 2007, LoCI posted a new policy regarding prison
visitation ("LoCI Policy").  *Civil Action Complaint*, ¶ 11, Doc. No. 5
("*Verified Complaint*"); Appendix A, attached to *Verified Complaint*.

The LoCI Policy advised certain female visitors as to the acceptable level of contact with inmates:

<u>ATTENTION</u>
<u>INMATES' WIVES, GIRLFRIENDS AND MOTHER OF CHILD</u>

YOU ARE PERMITTED A BRIEF HUG AND KISS AT THE START AND END OF YOUR VISIT

YOU MUST SIT OPPOSITE EACH OTHER DURING YOUR VISIT

ANY OTHER DISPLAY OF AFFECTION AND FAILURE TO FOLLOW THESE RULES WILL RESULT IN THE TERMINATION OF YOUR VISIT, AND NO WARNINGS WILL BE GIVEN

Appx. A. The LoCI Policy did not restrict the seating and physical contact of other male and female visitors, including homosexuals visiting homosexual inmates. *Id.; Verified Complaint*, ¶¶ 12-13.

Plaintiff's girlfriend visits him at LoCI. *Deposition of Adrian Edmonds*, pp. 23-24, Doc. No. 19 ("*Plaintiff Depo.*"). After the LoCI Policy was implemented, plaintiff's girlfriend continued to visit him at LoCI. *Id.* at 24, 78. Before and after the implementation of the LoCI Policy, plaintiff was able to hug and quickly kiss his girlfriend at the beginning and end of each visit. *Id.* at 56, 79; *Declaration of Jay D. Hurst*, ¶ 7 attached to *Defendants' Motion* ("*Hurst Decl.*"). Plaintiff and his girlfriend were also permitted to hold hands during the visit, although doing so was difficult because they had to reach across a table that was six or eight feet in length.[1] *Plaintiff Depo.*, pp. 16, 56, 77; *Hurst Decl.* ¶ 8.

### B. Plaintiff Complains About the LoCI Policy

On April 22, 2007, plaintiff filed an informal complaint resolution ("ICR") directed to defendant Brian Cook, Deputy Warden of

---

[1]Plaintiff was never reprimanded for engaging in inappropriate touching in the visiting room. *Plaintiff Depo.*, p. 56.

Operations.[2] *Verified Complaint*, ¶¶ 14-15; Appendix B, attached to *Verified Complaint*; *Plaintiff Depo.*, pp. 27-31; 66.  Plaintiff complained that the LoCI Policy unfairly punished and discriminated against heterosexual inmates.  *Id.*  Plaintiff also criticized the alleged failure of staff members to monitor and prevent inappropriate contact during visitation periods.  Appx. B.

On April 27, 2007, defendant Cook responded to plaintiff: "This decision [to implement the LoCI Policy] was discussed with Warden Cooper and me.  We are not changing any of the visiting process except that visitors will sit across from the inmate."  Appendix C, attached to *Verified Complaint*; *Verified Complaint*, ¶ 20; *Plaintiff Depo.*, pp. 28-32; 66-67.[3]

### C.   Plaintiff Complains About Staff Behavior

On April 24, 2007, plaintiff filed a second ICR, specifically complaining to "the Major of the Institution[4] regarding the bickering between visiting room staff members about who should be monitoring the visiting room floor."  *Verified Complaint*, ¶ 19; *Plaintiff Depo.*, p. 42, 44-47; *Plaintiff Depo.* Exhibit B, pp. 6-7.[5]  Plaintiff complained that it was allegedly ineffective monitoring by the staff during

---

[2]Defendants represent that defendant Cook is currently the Warden at Madison Correctional Institution.  *Defendants' Motion*, p. 3 n.1.

[3]Although plaintiff alleged in his *Verified Complaint* that "the warden signed of on the form letter sent from Mr. Cook," *Verified Complaint*, ¶ 23, plaintiff admitted that he did not mean that the Warden literally signed off on defendant Cook's ICR response.  *Plaintiff Depo.*, pp. 37-39.

[4]It is not immediately clear to the Court who is the "Major of the Institution."  Accordingly, the Court will refer to this individual as the Major.

[5]This complaint is not attached to the *Verified Complaint*.

visitation periods that resulted in the discriminatory LoCI Policy. *Plaintiff Depo.* Exh. B, p. 6. On May 1, 2007, defendant Cook responded to this ICR. *Plaintiff Depo.*, p. 67; Appendix F, attached to *Verified Complaint*.

### D. Notification of Grievance

On April 27, 2007, plaintiff sent a "kite" (an authorized inmate correspondence form) to defendant DeCarlo Blackwell, Institutional Inspector, requesting a Notification of Grievance form ("NOG") so that plaintiff could pursue his ICR. *Verified Complaint*, ¶ 23.

On May 8, 2007, plaintiff filed a form entitled "Appeal to the Chief Inspector" with defendant Gary Croft, Chief Inspector for the Ohio Department of Rehabilitation and Correction ("ODRC"). *Id*. at ¶ 25; Appendix D, attached to *Verified Complaint*. In addition to his substantive complaints regarding the LoCI Policy, plaintiff complained that his "attempts to get a NOG to pursue this matter has [sic] been in vain. [T]herefore I'm using this appeal form." Appx. D.

On May 11, 2007, defendant Blackwell responded to plaintiff's kite and provided a form entitled "Appeal to the Chief Inspector." *Verified Complaint*, ¶ 28.

On May 26, 2007, Don Coble,[6] Assistant Chief Inspector, returned plaintiff's complaint, notifying him that the NOG form and additional materials ("Disposition of Grievance") were necessary to resolve plaintiff's complaint. *Id*. at ¶ 30; Appendix E, attached to *Verified Complaint*; *Plaintiff Depo.*, pp. 40-42. On that same day, plaintiff

---

[6]Although the *Verified Complaint* alleges that defendant Croft returned plaintiff's complaint, plaintiff acknowledged that it was actually Mr. Coble who returned plaintiff's complaint and who signed the written response, Appx. E. *Plaintiff Depo.*, pp. 40-42.

again sent this complaint, transcribed on a form entitled "Appeal to the Chief Inspector," to defendant Croft, emphasizing that his attempts to obtain a NOG form had been unsuccessful. *Verified Complaint*, ¶ 31.

On June 6, 2007, plaintiff spoke with defendant Blackwell and ultimately received the proper NOG form. *Id*. at ¶ 33; *Plaintiff Depo.* Exh. A, p. 26. On June 8, 2007, plaintiff filed a NOG, Grievance Number CI-06-07-027, with defendant Gary Croft, Chief Inspector. *Plaintiff Depo.*, pp. 54-55; *Plaintiff Depo.* Exh. B, pp. 1-2.[7] Plaintiff complained about the LoCI Policy and the staff's failure to properly monitor the visiting room. *Plaintiff Depo.* Exh. B, pp. 1-2. Plaintiff also referred to defendant Blackwell's delay in providing the NOG form to plaintiff. *Id*.

On June 26, 2007, plaintiff was notified that defendant Croft had received a grievance against the "Inspector of Institution Services" regarding Grievance Number CI-06-07-027.[8] *Verified Complaint*, ¶ 41; Appx. F. On June 27, 2007, plaintiff sent a letter to defendant Croft complaining that his NOG was against the Warden, defendant Timmerman-Cooper, not against the Inspector of Institution Services.[9] *Verified Complaint*, ¶ 42; Appx. F. The next day, plaintiff received a letter from defendant Blackwell and a copy of the June 26th notice.[10] *Verified Complaint*, ¶ 43; Appx. F.

---

[7]A copy of the NOG was not provided to the Court.

[8]A copy of this notice was not provided to the Court.

[9]A copy of this letter was not provided to the Court.

[10]A copy of this letter was not provided to the Court.

Plaintiff submitted his *Verified Complaint* to this Court on November 30, 2007.  Doc. No. 1.

**E.    Plaintiff's Conversation With Defendant Blackwell**

On June 29, 2007, plaintiff reported to the office of Institution Services and spoke with defendant Blackwell.  *Verified Complaint*, ¶ 44; Appx. F.  At the end of the conversation, defendant Blackwell advised plaintiff: "You need to choose your battles more wisely."  *Id*.

**F.    Response to Plaintiff's NOG**

On July 11, 2007, defendant Croft responded to plaintiff's NOG, Grievance Number CI-06-07-027.  *Plaintiff Depo.*, pp. 54-55; *Plaintiff Depo.* Exh. C.  Defendant Croft stated:

> In your complaint you state that the visiting rules at LOCI have been changed to require an inmate's wife, mother of child, or girlfriend, to sit across from the inmate during visiting.  You state that this rule results in inmates being punished for officers not doing their jobs by properly monitoring visiting room activities.
>
> *            *            *            *
>
> Upon my review, I find that DRC Policy 76-VIS-01, Inmate Visitation states in part that
>
> Offender visiting facilities will permit opportunities for informal communication, including opportunity for physical contact.
>
> I find that the current practice allows for a brief hug and kiss at the start and end of each visit, which clearly permits opportunities for physical contact per policy.  There are no provisions in DRC Policy 76-VIS-01, Inmate Visitation that specify seating arrangements for inmates and visitors.
>
> *            *            *            *
>
> Accordingly, this grievance is DENIED.  The office will take no further action on this matter at this time.

*Plaintiff Depo.* Exh. C.

**G.  Communication With the Correctional Institution Inspection Committee**

On July 7, 2007, plaintiff sent a letter to the Correctional Institution Inspection Committee ("CIIC")[11] complaining that the LoCI Policy unfairly discriminated against heterosexuals and complaining of the overall inability of defendant Timmerman-Cooper, LoCI Warden, to manage the facility.  *Verified Complaint*, ¶¶ 46-49; Appendix F, attached to *Verified Complaint*; *Plaintiff Depo.*, p. 72.

On July 17, 2007, Shirley Pope, CIIC's Director, responded to plaintiff's letter.  *Verified Complaint*, ¶¶ 48-49; Appendix G, attached to *Verified Complaint*; *Plaintiff Depo.*, p. 72.  In addition to relaying the proper procedure for filing informal complaints, grievances and appeals, Ms. Pope stated:

> While policies may be the subject of a grievance, as cited in Administrative Rule 5120-9-31, it is my understanding that visiting is an area in which broad discretionary authority is had by each warden, due to the fact that visiting is a privilege, not a right.
>
> *          *          *          *
>
> [T]his office conducts on-going monitoring and evaluation of the grievance procedure.  We are not participants or decision-makers in the procedure, i.e., we have no authority to investigate or to resolve grievances.  However, we truly appreciate feedback from inmates who use the grievance procedure, including any specific suggestions for improvements.  Further, as indicated in my effort to initiate an inquiry to the Warden's office, we make a sincere effort to bring reported concerns to the attention of persons within the DRC who have the authority to actually resolve a particular problem.

Appx. G.

On July 22, 2007, plaintiff sent a second letter to Ms. Pope,

---

[11]Plaintiff also copied "the news media" on this letter.  *Verified Complaint*, ¶¶ 47, 49.

complaining again about the LoCI Policy and defendant Timmerman-Cooper's management of LoCI. *Verified Complaint*, ¶ 50; Appendix H, attached to *Verified Complaint*; *Plaintiff Depo.*, pp. 72-73.[12]

###    H.    The Instant Action

On December 12, 2007, plaintiff filed the instant action, naming defendants Timmerman-Cooper, Cook, Blackwell and Croft in their individual and official capacities. *Verified Complaint*, ¶¶ 4-7. Plaintiff seeks injunctive and monetary relief as well as "reconstruction of the grievance procedures" and "elimination of the requirements of exhausting the Ohio prison Grievance Procedures[.]" *Id*. at p. 14.

## II.   STANDARD

The standard for summary judgment is well established. This standard is found in Rule 56 of the Federal Rules of Civil Procedure, which  provides in pertinent part:

> The judgment sought shall be rendered if the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56©. Pursuant to Rule 56©, summary judgment is appropriate if "there is no genuine issue as to any material fact . . . ." *Id*. In making this determination, the evidence "must be viewed in the light most favorable" to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the

---

[12]The record does not clearly indicate whether Ms. Pope responded to plaintiff's second letter.

evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, summary judgment is appropriate if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "mere existence of a scintilla of evidence in support of the [opposing party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). "Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

In this case, plaintiff is proceeding without the assistance of counsel. A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than are formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972);

*see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A court should make a reasonable attempt to read the pleadings of a *pro se* litigant to state a valid claim on which the plaintiff could prevail, despite any failure to cite proper legal authority, confusion of various legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *Ashiegbu v. Purviance*, 74 F. Supp.2d 746, 749 (S.D. Ohio 1998) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). "This standard does not mean, however, that *pro se* plaintiffs are entitled to take every case to trial." *Id*. at 746 (citing *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996)). "Indeed, courts should not assume the role of advocate for the *pro se* litigant." *Id*. (citing *Hall*, 935 F.2d at 1110).

## III. Claims on Behalf of Others

Plaintiff alleges that he "is part of a group specifically selected" and "brings this action on behalf of himself and all others similarly situated." *Verified Complaint*, p. 2. This group purportedly includes "[i]nmates and visitors similarly situated." *Id*. at ¶¶ 63-68. Defendants do not address plaintiff's purported class claims.[13]

---

[13]Nevertheless, the Court notes that counsel for defendants was aware of the *Verified Complaint*'s attempt to assert these claims although she apparently concluded that those claims were without merit:

Q:    You're not an attorney. This isn't a class action. I don't care about the other inmates.

\*          \*          \*          \*          \*

Q:    Are you suing on her [plaintiff's girlfriend's] behalf or your behalf?

A:    Well, I mean, you're the one that said I can't do a class

*Pro se* prisoners are not adequate representatives able to fairly represent a class. *See*, *e.g.*, *Palasty v. Hawk*, No. 00-5840, 15 Fed. Appx. 197, 200 (6th Cir. June 20, 2001)(citing *Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (6th Cir. 2000); *Oxendine v. Williams,* 509 F.2d 1405, 1407 (4th Cir. 1975)): *Holmes v. Michigan Dep't of Corrections*, 805 F.2d 1034 (Table), 1986 WL 18651, *7 (6th Cir. 1986). Moreover, without a request for class certification under Fed. R. Civ. P. 23, a plaintiff's claims challenging a prison policy and access to the courts are restricted to alleged violations of his or her own constitutional rights. *See*, *e.g.*, *Newsom v. Norris*, 888 F.2d 371, 381 (6th Cir. 1989). Similarly, "'[t]o maintain a class action, the existence of the class must be pleaded and the limits of the class must be defined with some specificity.'" *Id*. (quoting *Wilson v. Zarhadnick*, 534 F.2d 55, 57 (5th Cir. 1976)). Here, plaintiff, a *pro se* prisoner, did not expressly request class certification and offers nothing other than generalized assertions that "similarly situated" individuals comprise the purported class. For all these reasons, the Court concludes that plaintiff lacks standing to pursue any claims of others. Accordingly, plaintiff's claims will be limited to alleged violations of his own constitutional rights.

**IV.  Equal Protection (First, Second, Third and Fourth Claims)**

---

action.

Q:   Correct.

A:   But it's on everybody's behalf, because it's– if it fixes the problem, it fixes it for everybody.

*Id.* at 36, 76.

**A.   Section 1983**

As discussed *supra*, the LoCI Policy requires that the wives and girlfriends of inmates, as well as the mothers of inmates' children, sit across a table from inmates during prison visits.  Plaintiff, a male inmate who receives visits from his girlfriend, contends that the policy deprives him of rights secured by the Constitution of the United States in violation of 42 U.S.C. § 1983.  *Verified Complaint*.

To state a colorable claim under Section 1983,[14] a plaintiff must allege the violation of a right secured by the federal constitution or laws by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because Section 1983 is a method for vindicating federal rights, and is not itself a source of substantive rights, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

In their motion for summary judgment, defendants raise a qualified immunity defense.  "The affirmative defense of qualified, or good faith, immunity shields 'government officials performing discretionary functions . . . from [Section 1983] liability for civil damages insofar as their conduct does not violate clearly established

---

[14]Section 1983 provides in relevant part:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan,* __ U.S. __, 129 S.Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "An official may, however, be held personally liable for civil damages for unlawful official action if that action was not objectively reasonable in light of the legal rules that were 'clearly established' at the time it was taken." *Gardenhire v. Schubert,* 205 F.3d 303, 311 (6th Cir. 2000) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). "This 'objective legal reasonableness' standard analyzes claims of immunity on a fact-specific, case-by-case basis to determine whether a reasonable official in the defendant's position could have believed that his conduct was lawful, judged from the perspective of the reasonable official on the scene." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The defense of qualified immunity protects a government official whether the official's error was "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson,* 129 S.Ct. at 815 (quoting *Groh v. Ramirez,* 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).

Ordinarily, application of the doctrine of qualified immunity requires an initial determination whether the plaintiff has alleged a deprivation of a constitutional right and, if so, whether that right was clearly established. *Pearson*, 129 S.Ct. at 815-18.[15]

When determining whether a right is "clearly established," this Court must look first to decisions of the Supreme Court, then to decisions of the United States Court of Appeals for the Sixth Circuit

---

[15]*Pearson* also held, however, that this analysis is not to be applied inflexibly. *Id.*

and other courts within this circuit, and finally to decisions of other circuits. *See Daugherty v. Campbell*, 935 F.2d 780, 784 (6th Cir. 1991). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Gardenhire*, 205 F.3d at 311 (citing *Creighton*, 483 U.S. at 640). However, "this not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Creighton*, 483 U.S. at 640 (citations omitted).

**B. Discussion**

Plaintiff argues that defendants violated his rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *See Verified Complaint*, ¶¶ 63-66. Specifically, plaintiff contends that defendants applied the LoCI Policy in a discriminatory manner. *Id.*

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. In order to withstand an equal protection challenge, prison policies that "do not interfere with fundamental rights or single out suspect classifications must bear only a rational relationship to a legitimate state interest." *Michael v. Ghee*, 498 F.3d 372, 379 (6th Cir. 2007) (quoting *Jackson v. Jamrog*, 411 F.3d 615, 618 (6th Cir. 2005) (internal quotations omitted)).

Prison visitation is not a liberty interest derived from the Fourteenth Amendment. *See*, *e.g.*, *Bazzetta v. McGinnis*, 430 F.3d 795,

14

804-05 (6th Cir. 2005) (refusing to hold that a prison regulation implicates due process guarantees and stating that "[w]e know of no circuit court that has found an implicit due process right to prison visitation"); *Spear v. Sowders*, 71 F.3d 626, 630 (6th Cir. 1995) ("It is clear that a *prisoner* does not have a due process right to unfettered visitation.") (emphasis in original); *Conway v. Wilkinson*, No. 2:05cv820, 2007 U.S. Dist. LEXIS 21177, at *10 (S.D. Ohio Mar. 26, 2007) ("[P]rison visitation is not a liberty interest which can be derived from the Fourteenth Amendment and which enjoys constitutional protection[.]").

In addition, prisoners are not considered members of a protected suspect class. *See*, *e.g.*, *Jackson v. Jamrog*, 411 F.3d 615, 619 (6th Cir. 2005); *Michael v. Ghee*, 498 F.3d 372, 379 (6th Cir. 2007) (citing *Jackson*, 411 F.3d at 619). Finally, sexual orientation does not mandate a greater level of scrutiny. *See*, *e.g.*, *Gay Inmates of Shelby County Jail/Criminal Justice Complex*, No. 84-5666, 819 F.2d 289 (Table), 1987 WL 37565, *8 (6th Cir. 1987) ("Because no high-level security is mandated by a classification by sexual preference, a rational basis for the classification is all that is required."). Because plaintiff has not alleged the violation of a fundamental right or membership in a suspect classification, the rational basis review standard therefore applies to plaintiff's equal protection claims. *See Michael*, 498 F.3d at 379.

Under the rational basis standard, "classifications must bear only a rational relationship to a legitimate state interest." *Jackson*, 411 F.3d at 618. "[G]overnment action amounts to a constitutional violation only if it 'is so unrelated to the

15

achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006) (quoting *Warren v. City of Athens*, 411 F.3d 697, 710 (6th Cir. 2005)). Therefore, "a classification 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Heller v. Doe*, 509 U.S. 312, 320 (1993) (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993)).

A plaintiff challenging governmental action on equal protection grounds bears the burden of establishing that defendants lack a rational basis. *Michael*, 498 F.3d at 379. Plaintiff in this action can carry this burden by "negating 'every conceivable basis which might support the [LoCI Policy], or by demonstrating that the [LoCI Policy] was motivated by animus or ill-will.'" *Id.* (quoting *Warren*, 411 F.3d at 711). *See also Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992) ("[T]he plaintiff could not make out a violation of his equal protection rights simply by showing that other inmates were treated differently. He would have to show that he 'was victimized because of some suspect classification, which is an essential element of an equal protection claim.'") (quoting *Booher v. United States Postal Serv.*, 843 F.2d 943, 944 (6th Cir. 1988)). Conversely, the governmental defendants bear no burden of proof. *See Id.; Walker v. Bain*, 257 F.3d 660, 668 (6th Cir. 2001) ("The government has no obligation to produce evidence to support the rationality of its statutory classifications and may rely entirely on rational speculation unsupported by any evidence or empirical data.") (citing

16

*FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993)).

In the present case, plaintiff alleges no facts that could support an equal protection claim. First, plaintiff, a heterosexual inmate complaining about visitation privileges, does not identify any suspect class of which he is a member nor does he allege the violation of a fundamental right. *See Verified Complaint*, ¶¶ 10-12, 63-68; *Defendants' Motion*, pp. 5-7; *Plaintiff's Response to Defendants* [sic] *Motion for Summary Judgment*, pp. 2-4, Doc. No. 27 (*"Plaintiff's Response"*).[16]

Second, the LoCI Policy is rationally related to a legitimate state interest. LoCI had received complaints about inappropriate sexual conduct between inmates and visitors. *Hurst Decl*. ¶¶ 3-5.[17] After implementation of the LoCI Policy, complaints about inappropriate sexual conduct decreased. *Id., ¶* 6. "The defendants' interest in maintaining orderly visitation between inmates and visitors is rationally related to their decision to" implement the

---

[16]To the extent that plaintiff relies on *Johnson v. California*, 543 U.S. 499 (2005) to support his contention that the LoCI Policy is unconstitutional under a strict scrutiny analysis, plaintiff's reliance is misplaced. *Plaintiff's Response*, pp. 3, 11. *Johnson* is distinguishable because the policy challenged in that case segregated inmates by race, a suspect class. Plaintiff's reliance on *Martin v. Wainwright*, 525 F.2d 983 (5th Cir. 1976), suffers from the same defect because visiting privileges in that case were denied on the basis of race. *Id.; Plaintiff's Response*, p. 2. Finally, plaintiff's reliance on *Underwood v. Loving*, 391 F. Supp. 1214, 1215-16 (W.D. Va. 1975) is unpersuasive. *Plaintiff's Response*, p. 2. Not only is *Underwood* not binding on this Court, but the court in that case ultimately dismissed the plaintiff's case. *Underwood*, 391 F. Supp. at1215-16 (observing that, among other things, "absent extraordinary circumstances, internal concerns such as visiting regulations should be resolved by jail officials").

[17]Plaintiff admits that he has never witnessed inappropriate sexual touching between a homosexual inmate and his significant other. *Plaintiff Depo.*, pp. 25-26. Likewise, plaintiff has never witnessed inappropriate sexual contact between an inmate and his sister, mother, father, uncle or child. *Id*. at 80.

LoCI Policy because of sexual misconduct during visitation periods.
*Thacker v. Campbell*, 165 F.3d 28, *5 (6th Cir. 1998). *See also Engle
v. Tennessee Dep't of Corr.*, No. 02-5970, 63 Fed. Appx. 860, 863 (6th
Cir. April 29, 2003) ("The visitation policy does not run afoul of the
Equal Protection Clause because it is rationally related to a
legitimate penological objective [and] does not deprive Engle of a
property interest protected by the Due Process Clause because she has
no legitimate claim of entitlement to visitation with. . .
inmates[.]") (citations omitted).

Plaintiff disputes any contention that it was inappropriate
sexual conduct that prompted or justified the LoCI Policy, and asserts
that "[t]here is not a large number of 'inappropriate Physical [sic]
contact' in the visit room"; a "news media release stated the policy
was adopted because 24 visiting rights was [sic] terminated last
year." *Plaintiff's Response*, pp. 8, 11, 13 (citing *Verified
Complaint*, ¶¶ 17-18). This Court cannot consider plaintiff's
assertions int his regard. Although statements in a verified
complaint have the same effect as statements made in an affidavit for
summary judgment purposes, *see*, *e.g.*, *Williams v. Browman*, 981 F.2d
901, 905 (6th Cir. 1992), all such statements must be based on
personal knowledge. *See*, *e.g.*, *Weberg v. Franks*, 229 F.3d 514, 526
n.13 (6th Cir. 2000); Fed. R. Civ. P. 56(e). Similarly, speculative
and conclusory allegations, even those contained in a verified
complaint, are insufficient to withstand a motion for summary
judgment. *See*, *e.g.*, *Emmons v. McLaughlin*, 874 F.2d 351, 354-55 (6th
Cir. 1989); *Hamilton v. Roberts*, No. 97-1696, 1998 U.S. App. LEXIS
22653, at *17-18 (6th Cir. Sept. 10, 1998). Accordingly, plaintiff's

18

conclusory allegations based on an unidentified "news media release" are insufficient to create a genuine issue of material fact in this regard.[18]

Finally, to the extent that plaintiff complains that the LoCI Policy unfairly punishes him, a heterosexual inmate who has not engaged in sexual misconduct during visits, "a classification does not fail rational-basis review because it 'is not made with mathematical nicety or because in practice it results in some inequality.'" *Heller*, 509 U.S. at 521 (quoting *Dandridge v. Williams*, 397 U.S. 471, 485 (1970)).  Accordingly, plaintiff's equal protection claims must fail.

## V.   Denial of Access to the Courts (Fifth and Sixth Claims)

### A.   Standard

Plaintiff also claims that defendants have denied him access to the courts, in violation of his rights under the First and Fourteenth Amendments.  *Verified Complaint*.[19]  Although prisoners enjoy a constitutional right of access to the courts, *Bounds v. Smith*, 430 U.S. 817, 821 (1977), that right is not without limit, *Lewis v. Casey*, 518 U.S. 343, 349 (1996).  The Sixth Circuit explains that the constitutional right "is not a generalized right to litigate but a

---

[18]Similarly, plaintiff's personal belief that staff negligence prompted inmates' inappropriate behavior is conclusory, irrelevant and insufficient to create a genuine issue of material fact.  *See*, *e.g.*, *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) ("In order to survive summary judgment, Plaintiff cannot rely on conjecture or conclusory accusations. . . . Conclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment.").

[19]Plaintiff also appears to suggest that he has been denied a constitutional right to pursue his grievance remedies.  However, there is no constitutional right to pursue a prison grievance.  *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991); *Overholt v. Unibase Data Entry, Inc.*, 221 F.3d 1335 (Table), 2000 WL 799760, **3 (6th Cir. 2000).

carefully-bounded right":

> *Bounds* does not guarantee inmates the wherewithal to
> transform themselves into litigating engines capable of
> filing everything from shareholder derivative actions to
> slip-and-fall claims.  The tools it requires to be provided
> are those that the inmates need in order to attack their
> sentences, directly or collaterally, and in order to
> challenge the conditions of their confinement.  Impairment
> of any other litigating capacity is simply one of the
> incidental (and perfectly constitutional) consequences of
> conviction and incarceration.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (citing

*Lewis*, 518 U.S. at 355).  "Thus, a prisoner's right to access the

courts extends to direct appeals, habeas corpus applications, and

civil rights claims only." *Id.*

Moreover, a plaintiff-prisoner claiming the denial of his right

of access to courts must show that he suffered an "actual injury" that

was caused by more than mere negligence on the part of prison

officials.  *Lewis*, 518 U.S. at 349; *Simkins v. Bruce*, 406 F.3d 1239,

1242 (10th Cir. 2005) ("[W]hen access to courts is impeded by mere

negligence, as when legal mail is inadvertently lost or misdirected,

no constitutional violation occurs.").  *Cf. Gibbs v. Hopkins*, 10 F.3d

373, 379 (6th Cir. 1993) (noting that prison officials' negligent

failure to conduct a monthly review would not be actionable).

Accordingly, in order to prevail on a claim of denial of the right of

access to the courts, a prisoner must show actual prejudice to a non-

frivolous claim.  *Hadix v. Johnson*, 173 F.3d 958, 964 (6th Cir. 1999);

*Jackson v. Gill*, No. 03-5045, 92 Fed. Appx. 171, 173 (6th Cir. Feb. 3,

2004) (citing *Lewis*, 518 U.S. at 351).  "Actual prejudice" may include

the dismissal of a case, an inability to file a complaint or the

failure to meet a court-imposed deadline.  *Jackson*, 92 Fed. Appx. at

173.  *See also Winburn v. Howe*, No. 00-2243, 43 Fed. Appx. 731, 733
(6th Cir. Mar. 21, 2002) ("An 'actual injury' does not occur 'without
a showing that such a claim has been lost or rejected, or that the
presentation of such a claim is currently being prevented.'") (quoting
*Root v. Towers*, 238 F.3d 423 (6th Cir. 2000)).

    **B.   Analysis**

    In the case *sub judice*, plaintiff complains that defendants
intentionally impeded his access to the courts.  *Verified Complaint*,
¶¶ 67-68; *Plaintiff's Response*.  Specifically, plaintiff complains
that his administrative grievance/complaint was returned to him three
times because it was not presented on the appropriate form.  Assuming
*arguendo* that defendants acted purposely in failing to provide
plaintiff with the appropriate form, plaintiff nevertheless fails to
show that this delay resulted in actual injury to him.  Although
plaintiff complains that this lawsuit would have been filed "a lot
sooner" but for defendants' alleged misconduct, the fact remains that
the action was in fact filed – albeit more than five (5) months after
plaintiff was apparently provided the appropriate forms.  Furthermore,
to the extent that plaintiff may argue that his ability to file this
action depended on his exhaustion of the grievance procedure,
plaintiff misapprehends his obligations under the Prison Litigation
Reform Act of 1996, 42 U.S.C. §1997e(a), which requires the exhaustion
of only those "administrative remedies *as are available."  Id.*
(emphasis added).  If defendants actually prevented plaintiff from
pursuing his administrative grievances, those administrative remedies
were not available to him and his failure to exhaust those remedies
would not have prevented him from proceeding to file his claims in

this Court.  *See Boyd v. Corrections Corp. Of America*, 380 F.3d 989, 996 (6th Cir. 2004)(exhaustion of administrative remedies will be deemed complete if prison officials fail to respond to grievance.). Moreover, plaintiff points to no prejudice or disadvantage to him or to his claims as a result of any delay on the part of any defendant in promptly processing his administrative grievances.  While the loss of the opportunity to be heard may assume constitutional dimensions, delay without prejudice to the litigation will not.  *See Gentry v. Duckworth*, 65 F.3d 555, 559 (7th Cir. 1997) ("Regardless of the length of an alleged delay, a prisoner must show actual substantial prejudice to specific litigation.").

Plaintiff also complains about defendant Blackwell's warning to plaintiff, "You need to choose your battles more wisely." *Verified Complaint*, ¶ 44.  However, there is no evidence that this ambiguous comment, made prior to this litigation, prevented plaintiff from pursuing his claims. Moreover, regardless of the comment's meaning, plaintiff has not shown that any defendant prevented him from filing the instant action or caused a failure on plaintiff's part to meet any court-ordered deadlines.

Finally, plaintiff also recounts a litany of alleged incidents of mismanagement on the part of defendants, particularly defendant Timmerman-Cooper.  These allegations appear to be completely unrelated to the issues in this litigation.  To the extent that plaintiff contends that the alleged mismanagement delayed this litigation, plaintiff fails to either allege or demonstrate an actual injury resulting from any such delay.  Under these circumstances, defendants are entitled to summary judgment on plaintiff's claim of denial of

access to the courts.

        **WHEREUPON**, *Defendants' Motion for Summary Judgment*, Doc. No. 20, is **GRANTED** in its entirety.  The Clerk shall enter **FINAL JUDGMENT** in this case.


April 17, 2009                          *s/Norah McCann King*
                                     Norah M^cCann King
                          United States Magistrate Judge